(No. 30875.—

CHARLES R. ANDERSON *et al.*, Appellants, *vs.* JOHN W. NICK *et al.*, Appellees.

*Opinion filed January 19, 1949—Rehearing denied March 16, 1949.*

JAMES W. FRY, and HARRY C. KINNE, both of Chicago, for appellants.

BENJAMIN S. ADAMOWSKI, Corporation Counsel, S. G. LIPPMAN, and SAMUEL L. GOLAN, (MARTIN H. FOSS, of counsel,) all of Chicago, for appellees.

Mr. CHIEF JUSTICE FULTON delivered the opinion of the court:

This is an appeal by the plaintiffs from a decree of the superior court of Cook County dismissing their complaint by which they sought to enjoin the operation of a tavern by the defendants on property which adjoins that owned by the plaintiffs. The trial court has certified that this case involves the validity of a municipal ordinance and that public interest requires an appeal to be taken directly to this court.

By their complaint for injunction plaintiffs sought to enjoin the operation of the tavern for the reasons that the area in which said tavern is located was originally a part of the old town of Lake in Cook County, and that on April 3, 1889, an ordinance was enacted by said town of Lake prohibiting the granting of a license to operate a tavern within the area in which plaintiffs' and defendants' properties are located. Plaintiffs allege that on July 15, 1889, this portion of the town of Lake was annexed to and has since remained a part of the city of Chicago, and that by the terms of section 18 of the Illinois Annexation Act in force at the time of the annexation of said area to the city of Chicago, it was provided that upon such annexation such prohibiting ordinance of the town of Lake should continue in full force and effect notwithstanding such annexation unless changed by referendum by the majority vote of the voters of the territory annexed, voting as a

whole on the question. They allege that no such referendum was ever held and that, therefore, said defendants are operating the tavern without a license and that such operation constitutes a public nuisance. The plaintiffs further allege that they own an apartment building adjoining the premises upon which the tavern is located and that they reside therein and suffer special damage by reason of annoyance and inconvenience to them and their tenants caused by the operation of said tavern, noisy juke boxes, confusion caused by intoxicated patrons of said tavern, and by the parking of cars and blowing of automobile horns near plaintiffs' property by patrons of the tavern.

The defendants answered the complaint and alleged that the operation of the tavern was conducted under a license issued by Edward J. Kelly, mayor of Chicago, acting as local liquor commissioner under the Illinois Liquor Control Act in force January 31, 1934. The defendants denied that the town of Lake ordinance and the 1889 Annexation Act in any way affected the validity of the license under which the tavern was operated. They denied that the tavern was located in a "prohibition area" and alleged that plaintiffs' property and the tavern property were located in the 45th precinct of the 17th ward of Chicago in which territory the majority of the voters thereof voted said territory as "wet territory" on November 8, 1938, and that no local option election had been held in said territory since that time. The defendants also alleged that there was no special damage to the plaintiffs. The city of Chicago was granted leave to intervene and answered the complaint substantially the same as the other defendants.

The plaintiffs filed motions to strike the answers of the defendants, which motions were denied. The plaintiffs then filed replies denying the affirmative allegations of the answers.

The case was then referred to a master in chancery who took testimony on the question of special damages to

plaintiffs and their property. The master found that the tavern caused no special inconvenience or trouble to plaintiffs and no damage to them or their property. The court overruled the plaintiffs' exceptions to the report of the master and entered a decree dismissing the complaint for want of equity on May 21, 1948, from which this appeal followed.

The plaintiffs contend that the ordinance of the town of Lake as passed on April 23, 1889, is still in full force and effect in the area in which the property owned by plaintiffs and the tavern operated by the defendants is situated, for the reason that under the Annexation Act of 1889 and under the Illinois Liquor Control Act of 1934, a majority vote of the residents of the identical territory as it was comprised in 1889 has not been conducted on the question of said territory continuing as antisaloon territory. They further contend that the operation of said tavern without legal authority constitutes a public nuisance and that plaintiffs have been specially damaged by reason thereof.

The defendants contend that the town of Lake ordinance of April 23, 1889, as well as the 1889 Annexation Act, has been repealed and that the election held on November 8, 1938, in precinct 45 of the 17th ward of the city of Chicago under the Illinois Liquor Control Act of 1934, definitely determined said territory to be wet territory and that the license issued by Mayor Edward J. Kelly, therefore, legally entitles the defendants to operate the tavern.

All parties concede that precinct 45 of the 17th ward of the city of Chicago, in which the plaintiffs' property and the tavern in question are both located, was a part of the old town of Lake, which was annexed to the city of Chicago on July 15, 1889. Under section 13 of chapter 57 of the old town of Lake ordinance entitled "An ordinance for revising and consolidating the general ordinances of the

Town of Lake" passed April 23, 1889, it was provided "No license shall be granted to keep a saloon * * * in all that portion of Section sixteen, twenty, twenty-one, twenty-eight and twenty-nine, township thirty-eight North, range fourteen east of the third principal meridian, bounded as follows, to-wit:" Here follows the area in question bounded by Seventy-ninth Street on the south, State Street on the east, Fifty-fifth Street on the north and Halsted Street on the west, within which said 45th precinct, including the properties of the plaintiffs and the defendants, is situated.

Section 18 of the Illinois Annexation Law in force on April 25, 1889, which governed the annexation of the town of Lake to the city of Chicago, provided, "When a part or the whole of an incorporated town, village or city is annexed, under the provisions of this act, to another city, village or incorporated town, and prior to such annexation an ordinance was in force prohibiting the issuing of licenses to keep dramshops within said territory so annexed, or any part thereof, then such ordinance shall continue in full force and effect, notwithstanding such annexation; Provided, the city council or board of trustees, as the case may be, may, on petition of one-fourth of the voters of the territory over which said ordinance extends, submit at an annual municipal election, but not oftener than every other municipal election, the question to the voters of such territory whether or not an ordinance shall be passed authorizing the issuing of dramshop licenses for such territory: And provided further, that upon petition in such case of one-fourth of the voters within any part of said annexed territory not less than one-half square mile in extent, asking that any such ordinance shall be continued in force in said portion of said annexed territory, said question of issuing dramshop licenses shall be submitted separately to the voters of said portion of said annexed territory, and if a majority of the voters voting on such question vote against dramshops, then such ordinance shall continue in force in said portion

of said territory, otherwise not. The ballots cast at such election shall be written or printed, or partly written and partly printed, 'For dramshops,' or 'Against dramshops,' respectively, and shall be received, canvassed and returned the same as ballots cast at said election for municipal officers, and if it shall appear that a majority of the voters so. voting upon the question vote 'For dramshops' then licenses may be issued for said territory on the same terms and conditions as licenses are granted by ordinances within other parts of the municipality. It is intended by this section to continue in full force and effect all ordinances of any municipality, the whole or part of which is annexed to another city, incorporated town or village, whereby the licensing of dramshops is prohibited or regulated within said city, village or incorporated town, or any part thereof, without the voters of the territory so affected consent, as hereby provided, to the repeal of such ordinance by the city, village or incorporated town to which the territory is annexed."

The effect of the Annexation Act was to preserve the ordinances of the town of Lake with reference to prohibiting the keeping of saloons, but it is to be noted that section 18 of the act did not irrevocably confine the territory to the provisions of the town of Lake ordinances in force at the time of annexation. It authorized the city council of Chicago on petition of the voters in the area affected to conduct a referendum regarding the continuance or changes of the ordinance.

Section 2 of article 11 of the Liquor Control Act of 1934 provides, "All other laws in conflict with this Act, or any of the provisions hereof, insofar as such laws and parts thereof are in conflict herewith, are hereby repealed." Ill. Rev. Stat. 1947, chap. 43, par. 194.

Section 18 of the Annexation Act granted certain protection to°ordinances of the town of Lake. However, the town of Lake was merely a political subdivision of the

State, and possessed limited powers, and by granting certain protection to the ordinances of the town of Lake the legislature did not preclude itself from subsequently changing the manner of the exercise of the police power of the State in altering the effect of the ordinances. We believe that section 18 of the Annexation Act, the Local Option Act of 1907, the Illinois Search and Seizure Act of 1919, the Illinois Prohibition Act of 1921 and the Malt and Vinous Beverage Act of 1933 have all been repealed. In *People* v. *Williams,* 309 Ill. 492, we held that the Prohibition Act of 1921 operated as a repeal of existing laws on the subject of liquor control except as to pending proceedings even though the Prohibition Act contained no express repealing clause. Similarly we held in *People* v. *Alfano,* 322 Ill. 384, that the Illinois Prohibition Act operated to repeal the law then existing with reference to the regulation of the sale and use of liquors. Section 3 of the act in relation to the construction of statutes (Ill. Rev. Stat. 1947, chap. 131, par. 3,) provides, "No act or part of an act repealed by the General Assembly shall be deemed to be revived by the repeal of the repealing act." Therefore, the Annexation Act of 1889 and the Local Option Act of 1907 and the other acts existing prior to the enactment of the Illinois Prohibition Act of 1921 were not revived when the Illinois Prohibition Act was repealed.

A municipal corporation created by a State which has been delegated the exercise of police power has no privilege to continue exercising the police power after the legislature has manifested a different intention with reference to the exercise thereof. (*Deneen* v. *Deneen,* 293 Ill. 454.) Likewise in the case of *Dingman* v. *People,* 51 Ill. 277, our court held that where the legislature had given the University of Chicago the power to prohibit the sale of liquor within a prescribed area such power could be revoked at the pleasure of the legislature because the police power of the State could not be subject to an irrevocable grant.

Therefore, we do not believe that the Annexation Act of 1889 conferred vested rights upon the plaintiffs or their property or the residents of the area involved with·reference to the continuation of the prohibitory ordinance and the mode of altering the same in the area.

The rights of cities and villages are now subject to the State law with respect to the prohibition and regulation of the sale of alcoholic beverages as contained in the Liquor Control Act. This law supersedes all special charter rights of cities and villages to license or otherwise control the same. *Great Atlantic and Pacific Tea Co.* v. *Mayor of Danville,* 367 Ill. 310.

In the case of *City of Fairfield* v. *Pappas,* 362 Ill. 80, in which case we had before us the right of a city council to prohibit the sale of liquor within a city, we held that the Liquor Control Act of 1934 was a complete revision of, and intended as a substitute for, prior laws upon the same subject and repealed all existing laws upon that subject. In that case we stated, in discussing the 1934 act, "The provisions of the 1934 act are therefore decisive that the sale of intoxicating liquor in cities, villages and incorporated towns cannot, in default of authority derived from an election called and held subsequent to the passage of the 1934 act and prior to the passage of the municipal ordinance, be prohibited by the initiatory act of the city council or president and board of trustees of such city, village or incorporated town." We believe that the rule announced in the case of *City of Fairfield* v. *Pappas* is the correct rule to be followed in interpreting the Liquor Control Act of 1934 and its effect upon prohibitory ordinances adopted prior to the eighteenth amendment. If the rule suggested by the plaintiffs were to be adopted by this court it would make toward confusion on the part of the enforcement of the laws with reference to the regulation of liquor since the orderly manner established by the Liquor Control Act of 1934 for the adoption or continuance of prohibitory

ordinances in areas would become ineffective in many instances, the residents of one area being subject to a different procedure than those of a neighboring area.

In the case at bar it appears that a majority of the voters in the precinct in which both these properties are situated have voted in favor of said territory being wet. We believe that the provisions of the statute establishing the precinct as an area for determination of local option questions in cities of over 200,000 is a proper classification and, having held that the State was not bound to continue the prior classification as provided by the Annexation Act of 1889, it follows that the operation of the tavern in question was pursuant to law and that the plaintiffs were, therefore, not entitled to the relief sought by their complaint.

In view of our decision that the operation of the tavern by the defendants was pursuant to law, it is unnecessary for us to consider the other errors with reference to special damage asserted by the plaintiffs.

For the reason stated in this opinion, the decree of the superior court of Cook County will be affirmed.

*Decree affirmed.*