Fred O. **TUCKFIELD**, Appellant,

v.

**STATE** of Alaska, Appellee.

Paul **TUCKFIELD**, Appellant,

v.

**STATE** of Alaska, Appellee.

Steven E. **LEAVITT**, Appellant,

v.

**STATE** of Alaska, Appellee.

Isaac A. **LEAVITT**, Appellant,

v.

**STATE** of Alaska, Appellee.

Nos. A-3260 to A-3263.

Court of Appeals of Alaska.

Jan. 25, 1991.

---

Marcia E. Holland, Asst. Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for appellants.

Cynthia M. Hora, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS,* District Court Judge.

## OPINION

COATS, Judge.

These consolidated appeals present an identical issue; whether the appellants could properly be convicted of a felony for distribution of alcohol under AS 04.16.-200(b). That statute provides:

> A person who violates AS 04.11.010 in an area where the results of a local option election have, under *AS 04.11.490— 04.11.500*, prohibited the Board from issuing, renewing, or transferring one or more types of licenses or permits under this title in the area is, upon conviction, guilty of a class C felony.... (Emphasis added.)

With certain exceptions which are not relevant in this case, AS 04.11.010 requires anyone who sells or offers to sell alcoholic beverages to have a license or a permit to do so.[1] Alaska Statutes 04.11.-490, .492, .496, .498, and .500 set out the various options and procedures for a community to conduct local option elections to regulate alcoholic beverages.

The legislature enacted these statutes in 1980. These statutes were part of an extensive revision of the state's regulation of alcoholic beverages. *See generally Harrison v. State*, 687 P.2d 332 (Alaska App. 1984). Before the 1980 revisions, a person who unlawfully sold or offered for sale an intoxicating beverage, in an area where the local community had made these activities illegal by means of a local option election, was guilty of a misdemeanor. Former AS

---

\* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. Those exceptions relate to persons under a judgment or decree of foreclosure or to social gatherings where all participants divide the cost of alcoholic refreshment. AS 04.11.010(a); 04.-11.020.

04.15.110. In the 1980 revisions to Title 4, the legislature provided that a person could be convicted of a class C felony in certain cases of "aggravated bootlegging." From 1980 to 1988, AS 04.16.200(b) provided (emphasis added):

A person who violates AS 04.11.010 in an area where the results of a local option election have, under AS 04.11.490—04.11.500, prohibited the board from issuing, renewing, or transferring one or more types of licenses or permits under this title in the area is, upon conviction, guilty of a class C felony, *if*

*(1) he has previously been convicted of a violation of AS 04.11.010;*

*(2) the sale or offer for sale was made to a person under 19 years of age; or*

*(3) the quantity of alcoholic beverages sold or offered for sale is 12 liters or more of distilled spirits, 24 liters or more of wine, or 45 liters or more of malt beverages.*[2]

*See generally, Morgan v. State*, 661 P.2d 1102 (Alaska App.1983). The legislature again amended the penalty provisions of AS 04.16.200(b) in 1988. Under this current provision, a person who sells alcohol in a community which banned the sale of alcohol is guilty of a class C felony, regardless of his prior record, the age of the buyer, or the amount of alcohol which he sells. The state argues that the current provision applies to the defendants in this case.

■ The appellants in these cases, hereinafter "Tuckfield," claimed that the state did not show that they committed a felony offense. Tuckfield argues that in order to show that he committed a felony offense, under AS 04.16.200(b), the state had to show that: (1) he violated AS 04.11.010; and (2) he did so "in an area where the results of a local option election have, under AS 04.11.490–04.11.500, prohibited the Board from issuing, renewing, or transfer-

ring [liquor licenses]." Tuckfield points out that Barrow did not conduct a local option election "under AS 04.11.490–04.11.500." Barrow conducted its local option election under former AS 04.10.430(a) on October 4, 1977. Tuckfield therefore argues that he was only subject to prosecution for a misdemeanor for selling alcoholic beverages in violation of AS 04.11.010.[3] Tuckfield argues that it is reasonable to infer that the legislature intended to make it a felony offense to sell alcoholic beverages in an area where the local option election was held following the effective date of the 1980 revisions to Title 4, but intended the offense to remain a misdemeanor where the community held the local option election under the former statutes. Tuckfield points out that, at the time that Barrow held the local option election, the statutes provided that the penalty for selling alcoholic beverages in an area where the community had banned the sale of alcoholic beverages was a misdemeanor. Tuckfield contends that it is reasonable to surmise that the legislature intended to have a local community, which had formerly banned the sale of alcoholic beverages, conduct another local option election after the legislature increased the penalty for selling alcoholic beverages to a felony. He points out that, under AS 04.16.200(a), a person selling alcohol without a license would still be guilty of a misdemeanor. Tuckfield also points out that under former AS 04.10.430(a) the ballot question for the local option election was phrased as follows, "For the sale of intoxicating liquors (Yes or no)." Under current AS 04.11.490(a) the ballot question must be phrased as follows: "Shall the sale of alcoholic beverages in _____ (name of municipality or village) be prohibited? (Yes or no)." Tuckfield argues that the language in the current statute is much clearer than that in the former statute. He

---

**2.** A 1983 amendment to AS 04.16.200(b)(2) substituted "21 years of age" for "19 years of age."

**3.** Alaska Statute 04.16.200(a) provides that a person who violates 04.11.010 is guilty of a class A misdemeanor. However, AS 04.16.200 provides that it is an affirmative defense to a prosecution under AS 04.16.200(a) that, "No profit was involved in the solicitation or receipt of an

order for the delivery of an alcoholic beverage." This affirmative defense does not apply to AS 04.16.200(b), which prohibits selling alcoholic beverages in areas where sale has been banned by *local option election*. Tuckfield does not concede, that upon retrial, he could not establish this affirmative defense.

contends that the legislature may have intended to have the community conduct a local option election under the current, clear language in AS 04.11.490(a) before authorizing felony penalties.

Tuckfield argues that in interpreting a statute this court is to carry out the intent of the legislature. In support, Tuckfield points to *Horowitz v. The Alaska Bar Association*, 609 P.2d 39, 41 (1980) where the court stated, "If the meaning of a statute is plain it should be enforced as it reads without judicial modification or construction." *See* 2A C. Sands, *Sutherland Statutes and Statutory Construction*, § 45.02 at 4–5 (4th ed. 1974). In addition, "it is well settled that a penal statute must be construed strictly and that ambiguities must be resolved against the state." *Romero v. State*, 792 P.2d 679, 682 (Alaska App.1990). *See* 3 C. Sands, *Sutherland Statutory Construction*, §§ 59.03, 59.04, 59.06 at 6–21 (4th ed. 1974). Tuckfield points out that AS 04.16.200(b) states clearly that the local option election must be held under AS 04.11.490—04.11.500.

In *Green v. State*, 462 P.2d 994, 1000 (Alaska 1969), the supreme court stated:

[I]t is a general rule in the interpretation of statutes that provisions of an original act which are repeated in an amendment are considered as a continuation of the original act. Such provisions are construed not as imposing a new requirement, but merely as continuing the original one, unless a contrary legislative intent is indicated.

*See* 1A C. Sands, *Sutherland Statutory Construction*, § 22.33 at 191–92 (4th ed. 1974). The legislature substantially amended Title 4 in 1980. However, former AS 04.10.430 which allowed voters in incorporated cities to ban the sale of intoxicating liquors, was substantially reenacted in AS 04.11.490. The 1980 revision expanded the number of communities which could hold local option elections and, as Tuckfield points out, did change the phrasing of the ballot question.

There is some legislative history for the 1980 revisions to Title 4. The Senate Journal Supplement contains a section by section analysis of Senate Bill 239 which formed the basis for the 1980 revisions of Title 4. Senate Journal Supplement No. 23 at 1–22 (April 1, 1980). The discussion of AS 04.11.490 indicates that the legislature wished to increase the number of options which local communities had to ban alcoholic beverages. Alaska Statute 04.11.490 allowed voters of a municipality or an established village to ban the *sale* of alcoholic beverages in their community. This was the only option available to voters in incorporated cities under former AS 04.10.430. However, in AS 04.11.492 the voters of a municipality could prohibit sale of alcoholic beverages unless the community allowed sale through a community liquor store which was operated under a community liquor license. Alaska Statute 04.11.496 allowed voters of a municipality or an established village to prohibit the sale *and importation* of alcoholic beverages into their community. Under AS 04.11.498, voters in a municipality or village could prohibit even the possession of alcoholic beverages. Alaska Statute 04.11.500 allowed voters in a municipality or established village to prohibit the sale of alcoholic beverages except under certain types of liquor licenses.

Although the Senate Journal Supplement discusses expanding the number of options which the legislature wished to give communities in local option elections and discusses expanding the number of communities which could hold local option elections, there is no discussion concerning how to treat communities which had formerly held local option elections under former AS 04.10.430. Similarly, in the Senate Journal Supplement the penalty section, 04.16.200, merely states that bootlegging is a class A misdemeanor unless the illegal sales are made to a minor or the violation is a second offense, in which case the violation is a felony. *Id.* at 19. From the statute and the legislative history, it seems clear to us that the legislature intended the 1980 revisions to expand the options which local communities had to ban the sale and use of alcoholic beverages and that the legislature intended to increase the penalties for "aggravated bootlegging." The change in bal-

lot language from "for the sale of intoxicating liquors.... (Yes or no)" to "shall the sale of alcoholic beverages in.... (name of municipality or village) be prohibited? (Yes or no)"—seems to have been changed to reflect the fact that municipalities and villages had more options available under local option elections with the 1980 revisions. Tuckfield's contention that the legislature intended local communities, which had already banned the sale of alcoholic beverages, to reconduct the local option election with a clearer ballot question is untenable. Furthermore, there is no indication that the legislature wished to have local communities which had already banned the sale of alcoholic beverages conduct another election because certain aggravated cases of bootlegging now faced felony penalties. What seems clear is that the legislature brought forward former AS 04.10.430 and renumbered it as 04.11.490. Therefore, when the legislature in AS 04.-16.200(b) referred to a local option election which was held under "AS 04.11.490" the legislature intended to include in this section local option elections held under former AS 04.10.430. This is consistent with the doctrine of statutory interpretation that "provisions of an original act which are repeated in an amendment are considered as a continuation of the original act." *See Department of Highway Safety v. Bender,* 497 So.2d 1332 (Fla.App. 2nd Dist.1986).

We believe that AS 04.16.200(b) gives sufficient notice to potential defendants of the conduct which is prohibited and the penalty for that conduct. As Tuckfield points out, AS 04.11.010 prohibits selling alcoholic beverages without a license. Alaska Statute 04.16.200(b) makes it a class C felony to sell alcoholic beverages in an area where sale is forbidden by a local option election. In our view, only a person with considerable legal sophistication would think to raise the argument which Tuckfield has raised in this case: that the statute specifies a local option election "under AS 04.11.490" and the local option election in Barrow was actually held under former AS 04.10.430, a former version of AS 04.11.490. We believe that anyone with this level of legal sophistication can also be charged with knowledge of the doctrine of statutory construction that "provisions of an original act which are repeated in an amendment are considered as a continuation of the original act." We also believe that common sense and the legislative history of AS 04.11.490 indicate that the legislature did not wish to void the results of previous local option elections when they renumbered former AS 04.10.430 as current AS 04.11.490. We accordingly conclude that the legislature intended to have felony penalties apply to defendants who sold alcohol in communities where the sale had been banned by local option election. We conclude that AS 04.16.200(b) conveys this intent with sufficient clarity to be enforceable.

■ In his separate appeal, Fred Tuckfield additionally complains that the trial court improperly allowed the state to introduce telephonic testimony at trial over his objection.

The facts concerning this issue are undisputed. Essentially, the state had difficulty introducing all of the necessary documents to establish that Fred Tuckfield did not have a liquor license and to establish the results of Barrow's local option election in 1977; Fred Tuckfield objected that some of the documents did not bear the appropriate state seals or other verifying details which would make them admissible under A.R.E. 902. In the interest of expediting the trial, the judge allowed the state to present telephonic testimony to authenticate the documents; the judge also directed the state to immediately send properly self-authenticating copies of the documents to the court in Barrow. Accordingly, Patrick Sharrock, director of the Alcoholic Beverage Control Board, testified telephonically regarding the authenticity of the documents. Later, after the jury was already deliberating, the original self-authenticating documents arrived in Barrow and were submitted to the court.

Tuckfield points out that while the Alaska Criminal Rules allow for telephonic testimony at trial, the consent of the defendant is required. Alaska R.Crim.P. 38.1(a). According to Tuckfield, the purpose of this

rule is to protect the defendant's constitutional right to confront witnesses against him. Tuckfield acknowledges that the trial court may relax the requirements of the criminal rules in the furtherance of justice, Alaska R.Crim.P. 53; however, he contends that the court exceeded the bounds of its discretion by effectively relaxing Rule 38.-1(a) when it allowed Sharrock to testify telephonically.

We believe that the superior court's ruling may best be viewed as a relaxation of A.R.E. 902. *See* Alaska R.Crim.P. 53. Rule 902 establishes a procedure for the admission of certain evidence—such as official government documents—without extrinsic evidence of authenticity. The purpose of this rule is efficient trial administration. *See* Evidence Rules Commentary at 435. Here, the judge admitted the documents using telephonic testimony; the court ensured the authenticity by requiring the state to provide copies of the documents with the appropriate official seals and signatures which would make them self-authenticating under A.R.E. 902. The state was able to present documentary evidence to the jury without the burden of authenticating it through witnesses, but only after the court had independently determined that they were authentic. The fact that the court received the properly authenticated documents after the jury retired for its deliberations is of no consequence; this was simply the court's means to ensure the propriety of its ruling, and it was not necessary for the new documents to be presented at trial. We note that Fred Tuckfield does not contend that the records which the state introduced were inaccurate. He essentially concedes that he did not have a liquor license and concedes the results of the local option election in Barrow in 1977. We find no error.

In his separate appeal, Paul Tuckfield argues that the prosecutor engaged in improper closing argument. We have reviewed the final arguments. We conclude that even if counsel's argument was improper, the argument did not appreciably affect the jury's verdict. We conclude that

any error was harmless. *Love v. State,* 457 P.2d 622 (Alaska 1969).

The convictions are AFFIRMED.