**David P. GEORGE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Duwaine E. Price, Appellant,**

v.

**State of Alaska, Appellee.**

**Nos. A–11050, A–10864.**

Court of Appeals of Alaska.

Aug. 2, 2013.

12.  258 P.3d 878.

13.  *Id.* at 886.

14.  *Id.* at 885.

15.  *Id.*

16.  *Id.* at 885–86.

17.  *Id.* at 885.

18.  *Id.*

19.  *Id.* at 886.

20.  *Id.*

Douglas O. Moody, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellants.

John K. Bodick, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: MANNHEIMER, Chief Judge, ALLARD, Judge and BOLGER, Supreme Court Justice.*

### OPINION

Judge ALLARD.

David P. George and Duwaine E. Price separately appeal from the superior court's denial of good time credit for time they spent at a halfway house as a condition of probation. We consolidated these appeals to decide whether AS 33.20.010, the statute governing "good time credit," applies to time that a probationer spends at a halfway house under a condition of probation. For the reasons set out below, we find that it does not, and we affirm the judgments of the superior courts.

*Facts and procedural posture*

In April 2007, David George pleaded guilty to misconduct involving a controlled substance in the third degree.[1] He was sentenced to 3 years incarceration, with 18 months suspended and 3 years of probation.

After George violated the conditions of his probation, the superior court modified his probation conditions to include up to 45 days of in-patient residential treatment and up to 6 months placement at a halfway house. George completed a residential treatment program at the Bill Brady Healing Center and was placed at Glacier Manor, a halfway house, before and after the treatment program.

George subsequently violated the conditions of his probation a second time, and the superior court then modified his conditions to permit placement at a halfway house for up to one year. George was later placed at Glacier Manor for approximately one month.

After finding that George had violated the conditions of his probation a third time, the court revoked George's probation and imposed the remainder of his suspended time (approximately 15 months). The court gave George day-for-day credit for the time spent as a condition of probation at the Bill Brady Healing Center and Glacier Manor, but did not give him good time credit.

George filed a post-conviction relief application requesting good time credit under AS 33.20.010(a) for the time spent at Glacier Manor. The State filed a motion for summary disposition, arguing that George was not entitled to good time credit under this statute because he was a probationer residing at the halfway house as a condition of probation, not a "prisoner" serving a term of imprisonment at a correctional facility. After holding an evidentiary hearing, the superior court agreed with the State's interpretation of the statute and denied the application for post-conviction relief.

In August 2001, Duwaine Price pleaded guilty to driving while intoxicated,[2] and failure to stop at the direction of a peace officer.[3] He was sentenced to 300 days with 240 days suspended for the driving while intoxicated, and to 5 years with 2 years suspended for the failure to stop.

In August 2005, the State petitioned to revoke Price's probation, alleging various violations of his conditions. Because the superior court did not believe that it could order Price into a halfway house as a condition of bail release, the parties agreed that, pending adjudication, Price would be released on bail and would "voluntarily" check into a halfway house. Price resided at Glacier Manor for approximately three months. The superior court later issued an order modifying Price's conditions of probation adding a provision for placement at a halfway house, and Price continued to reside at Glacier Manor for approximately three weeks pursuant to the new condition.

In the spring of 2006, Price violated his probation again and was ordered to serve 2 years of his suspended time. Price was given day-for-day credit for all of the time he spent at Glacier Manor while on probation but he was not given any good time credit.

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution and Administrative Rule 24(d).

**1.** AS 11.71.030(a)(1).

**2.** AS 28.35.030(a).

**3.** AS 28.35.182(b).

Price later filed a post-conviction relief application requesting good time credit for the time he spent at Glacier Manor. The superior court denied Price good time credit for time spent at Glacier Manor while on bail release, finding that Price voluntarily resided at the halfway house during that time. Additionally, the superior court found that Price was not entitled to good time credit for time spent at Glacier Manor while on probation, because Price was not a prisoner serving a term of imprisonment.

These appeals followed.

*Is a probationer entitled to good time credit under AS 33.20. 010 for time spent at a halfway house as a condition of probation?*

On appeal, Price and George argue that because parolees are entitled to good time credit for time spent at a halfway house,[4] probationers should similarly be entitled to good time credit.

■ Whether a probationer is entitled to good time credit under AS 33.20.010 is a question of statutory interpretation, which we review *de novo*.[5]

■ Alaska Statute 33.20.010 provides that a prisoner "is entitled to a deduction of one-third of the term of imprisonment ... if the prisoner follows the rules of the correctional facility in which the prisoner is confined." "By its terms ... AS 33.20.010 applies only to prisoners who are serving sentences in correctional facilities."[6] In *State v. Shetters*, we noted that "even though probationers are entitled to day-for-day credit against their sentences for the

time they spent in jail-like residential facilities as a condition of probation, they are *not* entitled to a corresponding good time credit under AS 33.20.010."[7] We distinguished parolees from probationers because probation is "an act of grace and clemency," intended as a more lenient alternative to imposition of the statutory penalty for the defendant's crime.[8] In contrast, mandatory parole is an established variation on imprisonment.[9] Thus, we found that a prisoner released on mandatory parole is still technically a prisoner serving his or her sentence of imprisonment and is therefore covered by the good time statute.[10]

The distinction we recognized in *Shetters* between parolees and probationers is bolstered by the statutory definitions of "parolee" and "probation." A "parolee" is a "prisoner" who remains subject to the custody and jurisdiction of the Department of Corrections.[11] In contrast, "probation" is "a procedure under which a defendant ... is released by the superior court subject to conditions imposed by the court."[12]

■ In addition, while a sentencing court can designate a particular treatment program or facility as a condition of probation, only the Department of Corrections can specify where a prisoner serves a term of imprisonment.[13] Therefore, when the Department of Corrections places a parolee at a halfway house, the Department of Corrections is exercising its authority to determine where the defendant should serve his or her term of imprisonment.[14] The superior court does not have that authority; its designation of a halfway house is predicated on its authority to

4. *See State v. Shetters*, 246 P.3d 338 (Alaska App. 2010).

5. *Alto v. State*, 64 P.3d 141, 142 (Alaska App. 2003).

6. *Valencia v. State*, 91 P.3d 983, 984 (Alaska App.2004).

7. 246 P.3d at 334, *on reh'g* 246 P.3d 338 (Alaska App.2010) (citing *Valencia*, 91 P.3d at 983–84; AS 12.55.086(c); and *State v. Bourdon*, 193 P.3d 1209, 1213–14 (Alaska App.2008) (Mannheimer, J., concurring)).

8. *Shetters*, 246 P.3d at 336 (quoting *State v. Staael*, 807 P.2d 513, 517 (Alaska App.1991)).

9. *Id.* (citing *Staael*, 807 P.2d at 517–18).

10. *Id.* at 336–37.

11. AS 33.16.900(9); AS 33.16.020(a).

12. AS 33.05.080(2).

13. AS 33.30.061(a); *Bourdon*, 193 P.3d at 1213 (Mannheimer, J., concurring); *State v. Combs*, 64 P.3d 135, 137 (Alaska App.2003).

14. *See Bourdon*, 193 P.3d at 1211, *cited with approval in Shetters*, 246 P.3d at 335.

impose conditions of probation that are "reasonably related to the rehabilitation of the offender and the protection of the public and ... not unduly restrictive of liberty."[15]

Price and George argue that it is illogical to grant good time credit to parolees but not to probationers who reside at the same halfway house. They assert that focusing on the mechanism for placement at a facility, rather than on the nature of the facility itself, produces arbitrary and unfair results.

However, the results of this distinction are not arbitrary when viewed from a policy perspective. The legislative purpose of the good time statute is to provide prisoners with an incentive to remain on good behavior.[16] Defendants on probation have a different incentive for good behavior—if they violate the conditions of their probation, the court can revoke their probation and require them to serve the remainder of their sentence.[17] For these reasons, we previously found that "the Alaska Legislature validly restricted good time credit to prisoners who are serving their sentences in prison."[18] We acknowledge that this distinction leads to different treatment for parolees and probationers who are placed as a condition of probation at a halfway house, but this is the policy the Alaska Legislature has adopted.

*Price is not entitled to good time credit regardless of whether he stayed at Glacier Manor voluntarily or as a condition of his probation.*

Price also argues that the superior court erred in finding that he stayed at Glacier Manor voluntarily during his bail release, rather than staying there as a condition of probation. Because only prisoners are entitled to good time credit, Price would not be entitled to good time credit regardless of

whether he stayed at Glacier Manor voluntarily or as a condition of probation. We therefore do not decide whether Price was at Glacier Manor voluntarily or as a condition of his probation. We note that Price was granted day-for-day credit for this time.

*Price's claim is not barred by the statute of limitations.*

The State argues that Price's claim for good time credit is barred by the statute of limitations.[19] The State did not raise this claim below. Post-conviction relief actions are generally governed by the rules of civil procedure, which require parties to plead the statute of limitations in their answer.[20] Because the State did not raise this issue until appeal, it is waived.[21]

*Conclusion*

Because Price and George resided at Glacier Manor as a condition of probation, and not as prisoners serving a term of imprisonment, the judgments of the superior court are AFFIRMED.

**15.** *See Dawson v. State*, 894 P.2d 672, 680 (Alaska App.1995) (citing *Roman v. State*, 570 P.2d 1235, 1240 (Alaska 1977)).

**16.** *Valencia*, 91 P.3d at 984 (citing *Briggs v. Donnelly*, 828 P.2d 1207, 1209 (Alaska App.1992)).

**17.** AS 33.05.070(b).

**18.** *Valencia*, 91 P.3d at 984.

**19.** AS 12.72.020(a)(4) ("A claim may not be brought under AS 12.72.010 or the Alaska Rules

of Criminal Procedure ... if one year or more has elapsed from the final administrative decision of the Board of Parole or the Department of Corrections that is being collaterally attacked.").

**20.** *Nelson v. State*, 273 P.3d 608, 611 (Alaska 2012); Alaska R. Civ. P. 8(c).

**21.** *See Barrett v. Byrnes*, 556 P.2d 1254, 1255 (Alaska 1976).